Our next case for this morning is case number 416-0475, Shafer v. City of Springfield. For the appellant, we have Mr. Nessler. And for the appellee, we have Ms. Marquita Trotter, is that correct? Thank you. And Mr. Brad Elworth. And then I see we have a Mr. Steven, is it Ron, who's not arguing? Okay, thank you. You may proceed, counsel. The trial court erred when it dismissed the plaintiff's cause of action. The plaintiff's cause of action was dismissed pursuant to both Section 615 and Section 619 of the Photo Exchange Procedure. I'll begin today by talking about Section 619 and why the trial court erred by dismissing the plaintiff's complaint pursuant to 619. The complaint should not have been dismissed because a genuine issue of material fact exists concerning the owner, designer, planner, and maintainer of Woodward Street as it approaches and intersects with Stevenson Drive. Further, the plaintiff's complaint is not solely based upon the placement of a traffic control device, nor is it sounded in a failure to provide traffic signals or traffic signs. The plaintiff, excuse me, the defendants, each said, attached their motions to dismiss in affidavits. And those affidavits spoke to the ownership of Adelaide Stevenson Drive. However, those affidavits were narrow, myopic. They didn't talk about the portion of the intersection where the plaintiff's cause of action resides. And that portion is the portion of Woodward Street that approaches and intersects with Adelaide Stevenson. All intersections are comprised of more than just the square of the two overlapping roadways. Intersections are designed to have roads that lead to that intersection. In other words, they lead to and intersect with. In this case, Woodward Street is left completely outside of the defendant's affidavits. And in the close reading of those affidavits, it becomes clear that what they're really saying is that the state controls Stevenson Drive and the state controls where Stevenson Drive intersects with Woodward Street. However, they did not talk about the control of Woodward Street. So on their face, the affidavits with regard to the issue of control should have failed. The court erred when relying upon those affidavits with regard to the control issue because they don't talk about control of Woodward Street. They don't talk about the design of Woodward Street and the intersection that's created by that portion of the intersection. In addition to that fact, is the affidavit attached by the plaintiff pursuant to Supreme Court Rule 191B, where the plaintiff says, pursuant to that rule and in line with the Supreme Court's allowance to do so in 619 motion, that there's more to this roadway than what the affidavits that are attached by the defendants talk about. And in support of that, the plaintiff didn't just say, I hope. No, she attached the materials that she's relying on when she says that. Two materials that I would bring to the court's attention today. First was the response to a FOIA request to the Illinois Department of Transportation. That was attached. This map clearly shows that Woodward Street is under the jurisdiction of Woodside Township. Creates a question of fact as to who owns that portion of this intersection. The second map was taken from the website of the Illinois Department of Transportation. And I'm a little far away from you, so I've kind of blown up portions of this. The first portion is this legend that shows some colors. Municipalities control blue. Townships control the black. And when we look at that map, we see that the very important aspect of the intersection that is Woodward Street is controlled by blue, the city, and black, the township. Now, where is the evidence supporting the conclusions you're drawing from the map? Well, that, I think, is in line with what a 191B is designed to do. Those facts are squarely within the minds of the defendant, which I don't have access to. And this Supreme Court acknowledges... I don't understand it. Yes. What do you mean they're within the minds of the defendant? Well, the defendant, only the defendants are able... I agree with that, Your Honor. Okay. That's not the question of what's in the defendant's minds. I might have misunderstood Justice White's question. I think that was your question. The allegations you just made from those maps, where is the factual basis underlying that as to the support for the claims you just made? Well, the maps were provided by the Illinois Department of Transportation. And they're the ones who drew the areas on there. In other words, the Illinois Department of Transportation provided this map in the exact form that it's in. In other words, showing this line saying that Woodside Township has jurisdiction. I didn't add that. That was added by the Illinois Department of Transportation. So, as far as this portion, the maps themselves and the lines that are drawn on these maps, those are provided by the state of Illinois. Here's the thing. Affidavits in support of or in opposition to motions for summary judgment are designed to be a substitute for testimony at trial. So, if in this case we're at trial, what's the evidence in support of what you're claiming here? Is this a public record you're claiming that somehow speaks for itself and we don't need anyone to testify to it? Or we got something from the Department of Transportation. Well, that typically wouldn't be enough. Who is that person you would call who would have the expertise who could testify to this particular fact that you're asserting to us to defeat their claims? I think that the affidavits discussed by Rule 191A certainly apply more to the question as I understand it, Your Honor. But B allows when we believe, in other words, when the plaintiff or a party has a reasonable belief that some evidence exists, but that it's in the mind of the defendant or is outside of the reach of the plaintiff. Okay, what part of what you just said is beyond your reach? And in the mind of the party, what streets are within a jurisdiction? How would that ever be a matter in their minds? It seems to me this is either something which is covered by the state or is in the jurisdiction of Woodside Township or whatever. It doesn't have anything to do with what's in their minds, does it? I would respectfully disagree, Your Honor, to the extent that I can't approach the defendant without deposition, without interrogatory, without discovery powers to ask them exactly what role they play on exactly which portions of this roadway. We have enough evidence to create a good faith belief that they have some role. And we know that because the Illinois Department of Transportation has told us through one map that Woodside has some control and the city of Springfield has some control through another map. But they don't specify exactly what control. Now, is that control at the intersection or leading up to the intersection? And that's where the genuine issue of material effect exists. The accident happened at the intersection, right? Exactly right. So where would Woodside intersects with Stevenson Drive? It approaches and intersects. So who exactly controls that connection point? We know who controls the intersection, though, right? Well, we know who controls the square on Adelaide-Stevenson. And I think that reading exactly what one of the affidavits here says really clarifies that point very, very specifically. It says, Stevenson Drive is a state road and its intersection with Woodward Street falls outside of the jurisdiction of the township of Woodside. Okay, so what we're talking about is Stevenson being a state road, and where that road crosses over, right, the Woodward Street, there we have jurisdiction to the state of Illinois. But the design that's complained of in the plaintiff's complaint is the design of how Woodward Street actually connects to Adelaide-Stevenson. And there's no allegation of fact in any of the affidavits provided that talks about that. So your case is based on the fact not that there was a problem at the intersection itself, but there was a problem as you approached the intersection. I don't think there's a distinction. There's a distinction. It might complain that when you're stopped at a stop sign, you're technically still on roadway. Hypothetically, in this case, you're still on Woodward. You're on the approach to the intersection. You're not dead center in the intersection. But you're still at the intersection. You're part of the intersection. Well, either you're at the intersection or you're approaching. It's not the same thing. Would you agree? Indemnically, I wouldn't. When we talk about intersection, there's a point where it intersects. Right. I think that, yes. But I think an intersection, the term intersection is broader than just the square that's formed by the exact point where the two roads meet. I believe that when you're designing an intersection, you don't design a box. You design how the road approaches that box. Should you force a right-hand turn? Should you? A million different design ideas that go into it besides just here's a square on the ground where two roads intersect. So I think the term intersection and the design and the plan of this intersection necessarily includes the portion of Woodward Street that I've been discussing. And specifically, the defect and dangerous conditions caused by the design and plan. And can you be a little more specific about that as far as how the maintenance of the street leading up to the intersection caused the accident? I mean, have you sufficiently fled that? I believe so, Your Honor. And I think to answer the maintenance aspect of the question, I have to begin with the design aspect of the question. Because they're pledging the alternative, and I think it just naturally is explained a little more clearly by starting with the design. So let's identify the defect first. And I'm talking about how you've pledged it in your complaint. So, I mean, you're a very articulate young man, but I want to stick to the facts in your complaint that support that obligation. The defect that I point out in the complaint that I pledged is first and foremost a defect by a dangerous condition that's created by a plan or design of a roadway. And the alternative... Now, that's a conclusion that you just stated. Those aren't facts. Well, let me get to the facts that support it. I do think that it's an ultimate fact, but I'm kind of answering three questions at once now. So if I can get to the defect first, and then I'll move on if it pleases the Court. So we have a defective plan or design that's been made apparent that it's created a dangerous condition by its use. And that dangerous condition, the fact that it supports that dangerous condition, is that when you're up on Woodward Street, about to turn onto Stevenson, you can't see traffic that's coming from...that's traveling west on Stevenson. And in turn, traffic's traveling west on Stevenson, can't see traffic traveling south on Woodward Street. So the allegation of fact that supports the dangerous condition, what is the dangerous condition, is this line of sight issue that's described. And it's first alleged as a line of sight issue that's created by a defective... excuse me, that's a dangerous condition created by the plan or design of the intersection. However, I don't have access to the plan or design of the intersection. So in the alternative, I also plead that it is based upon the maintenance of the intersection. So let's say, hypothetically, that the plan or design is perfect. That if it's implemented correctly, there's no accidents, perfect line of sight. However, over time, the intersection's been allowed to erode down. And through poor maintenance, they've allowed this unreasonably dangerous condition to remain on their property. I've pled the two in the alternative for that circumstance. But the first, foremost, and primary thrux of the plaintiff's complaint is that a dangerous condition is created by the very plan and design of this intersection. That the plan or design of this intersection, where the condition's created, is how Woodward Street connects to Adelaide-Stevenson. And there's nothing in any affidavit on the record that supports that Woodside doesn't have any control over that or that the state of Springfield doesn't have any control over that. So on its face, the allegations for the 619 are not contradicted and should be taken as true for the purpose of 619 that say that the city of Springfield has control of the design, ownership, maintenance of Woodward Street where it connects to this intersection. And the same holds true in the alternative to the city of Springfield. I don't understand the distinction you're drawing between owning the street leading up to the intersection and the intersection, if the intersection is that issue. Well, what I'm trying to, I think, distinguish, and a lot of this, in my estimation, comes from the vagaries of the affidavits that were attached. They just say the intersection. They don't talk about, they talk about Adelaide-Stevenson. They talk about the intersection. They talk about stop signs and traffic control signals, which don't have anything to do with the case. But the issue that I'm trying to, I guess, very unartfully, and I apologize, I do, very unartfully get across is that intersections are more than simply a square that's created by two roads intersecting. Where does that come from, that proposition? Well, you can't get to it. It seems to me that would be an argument, as a matter of law, strikes me as novel. And what is the legal basis for that argument? Well, you could say it was going back a mile. I mean, that was problematic leading up to the intersection. Definitely not what I mean. Definitely not what I mean. Absolutely not. But what I see leading up to it, imagine yourself driving, and you're coming to an intersection, and there's a red light. You slow down, and you stop. You're stopping on a road leading up to the intersection, but you're stopping at the intersection. In other words, these roads are creating an intersection. So you can't limit an intersection to simply a square. That's just a square of roads. That's true. As a matter of law, where does that come from? I don't know that it's a question of law. They can't limit the intersection to the intersection. If there's a problem with the intersection, maybe I can see that stoplight five blocks away. Does that still count? Maybe let me approach it this way, that to overcome the significant burden and the extraordinary remedy that's being requested in a 619 motion to dismiss, you cannot simply refer to an intersection as the area that you don't have control over. You have to be specific. Well, the intersection is where the action occurred. The intersection is badly designed or is flawed in some fashion. What I don't understand, and I don't understand where you're signing any law to support this, is that we don't just concern ourselves with the intersection. We're concerned ourselves with 100 feet before the intersection. Where does that come from? When I say the road leading up to the intersection, I certainly don't mean a mile back or 100 feet back. I'm talking about as it connects to the intersection. In other words, let me phrase it this way, if it pleases the Court. The burden of proof for dismissal of this claim is on the defense. The defense's affidavits are vague at best and do not discuss the totality of the intersection. They say, well, we don't own this portion of the road, and therefore we don't have any liability here. But they ignore the portion of Woodward Street that actually makes the connection where the plaintiff's complaint actually resides. So the extraordinary burden of a dismissal on the pleadings based on evidence, in other words, asking the plaintiff to prove their case before any discovery, before any other sort of effort can be made, dismissing it outright at the beginning. This extraordinary remedy cannot be supported by a vague term like intersection. Before your time runs out, I want to ask you about the other issue concerning your claim that you were improperly denied an opportunity to amend your complaint. Yes, Your Honor. After the trial court granted the motion to dismiss, did you ask for an opportunity to file an amending complaint? I asked in my pleadings, and then I confirmed with the trial court that he was denying that at the end of the case. Yes, Your Honor. Well, I'm... In other words... When you asked in your pleadings, what does that mean? Well, at the end of my 615 response, my 615-619, the 619.1 response, I asked for if the court should grant these, that I should also be permitted leave to amend as one of my arguments. So the court granted the motion to dismiss. Yes, Your Honor. And subsequent to that, did you reassert your claim that you want an opportunity to file an amended complaint? I asked him if he was also denying my request to amend a complaint. So if the court would consider that a re-request... Okay. What did the court say? Yes, I'm denying it. Okay. It's on. So here's my problem. We're on the appellate court now, but this panel, my distinguished colleagues, and I represent, I don't know, 30-plus years of trial court practice. That's where our sympathies lie. It seems to me that if you're asking the trial court for this opportunity to file an amended complaint, you ought to demonstrate why it is that you should be granted this and what, in your effort to do this, you should provide the amended complaint that you wish to file. You didn't do that in this case. And in reading your brief, it said, well, we could be arguing this and could be arguing that. But why? Two things. One, why didn't you include the proposed amended complaint? And two, why should we reverse the trial court's exercise of its discretion in this regard in the absence of you doing so? Then if I go over, may I finish? You have until the red light goes on. First, I think in practice, when you have a 615 motion filed, and in practice I'd say almost 100% of the complaints that are filed, I get a 615 or a 619. And maybe 2% of those are granted. Maybe 2%. They're routinely filed and routinely denied. At the end of all of them, you still put the language asking to re-plead, because in case the judge wants to see something that's not there, then you'd like to have the out to do that. But by the same token, I don't go to any of those thinking that maybe there is a defect here. If I did, I would just ask for a leave to amend, and I'd file an amended complaint. Because I'd say, you know what? The defendant's right on this. I think that I don't have an argument. I should probably amend the complaint. And I've done that. I've done it before many times, gone in with an agreement. I've never once on a complaint been denied the ability to amend it. And I think that the problem that you run into with a rule, a hard rule that requires an amended complaint, for every time a 615 is filed is, I might as well have two complaints. Counsel, I understand everything you said. Here's my problem. The trial court says, motion to dismiss granted. Your request to file an amended complaint is denied. Now, at that point, it seems to me that, at a minimum, you ought to be saying, well, Judge, you should reconsider that. I didn't know you were going to grant the motion. I don't think you should have. But in view of your having now granted the motion, let me show you why you should grant my request to file an amended complaint. You didn't do that. I did not, Your Honor. Why not? Well, I mean, truthfully, getting into extended arguments with judges, and I'm very careful about that, very, very careful in my practice. I don't ever want to come off as special. I am the trial judge in this case. I've granted this motion to dismiss. I understand, by the way, it's kind of an exceptional thing to deny the motion of the plaintiff to file an amended complaint.  It's a helpful matter to the court, especially if you are going to take it to the common enemy, otherwise known as the appellate court, and argue that this was an error to show, hey, Judge, if you don't grant my request, this is what I'm asking you to consider, and I'm going to be pointing out to the appellate court as well, on why you should be granting my motion to refile. But it's not a matter of an argument. It's a matter of a courtesy, and there is case law, as you know, that suggests you really need to do this. So you're asking us to reverse the trial court based upon a lot of stuff in the appellate court brief that says, oh, I could argue this and I could argue that or allege this in the complaint, but the trial judge was never given the benefit of it. Why should we do it? May I, Your Honor? Please. All of the issues that I brought up, which I think is one mostly, that there could have been a channelization of the roadway to force a right-hand turn, is a remedy, and it has nothing to do with the duty that the defendant had. It has nothing to do with the breach, and it has nothing to do with how that breach led to damages. I don't have to explain in a slip and fall that they should have used the towel to wipe it up. Simply that they had the dangerous condition on their property is the breach. And so I don't think that technically it's legally accurate or necessary to include that information in the complaint. I did not say to the appellate, to the trial court, I agree. And you know, in the future, will I start to create an amended complaint for every 615? I don't know, but maybe I have to now. When the motion is granted. I agree with you. I'm just, without sounding defeated about the whole thing, practicing with judges, especially at a younger age, getting into it with them is, you might as well recuse them for the rest of your career, because there is a practical aspect to the law that we all as lawyers learn. And that practical aspect certainly is, you know, the way my dad always said it was, you lose the judge, you lose the case. And if you lose the judge at my age, I lose all the cases. And so that's the best answer I can give you on that matter. Thank you, Mr. Nesslin. Thank you. Now, Ms. Trotter, will you be arguing first, or Mr. Elbert, or how is that going to work? I don't know how you all have your areas divided up. But the question on my mind is, this issue of leading up to the intersection, is that something that should be considered? Or are we just looking at the intersection? May I speak to the court? The way that we have split up the argument today, I would be focusing on the 615 dismissal. But to answer your question, I believe that we are focusing on the intersection of the two roads. That's where the incident occurred. And as we have alleged and provided affidavits with support, that intersection where the incident occurred is under the jurisdiction of the state of Illinois, not the city and not Woodside Township. And so when you say that, you're talking about the complete intersection where all the roads meet. So there's no portion of it owned by any entity other than the state. Correct. As I understand the definition of an intersection, there's no question here about who has control and ownership of the intersection. Because, of course, opposing counsel is saying that there's an inadequacy in the affidavits that were provided as it relates to, is it Woodward or what's the name of the street? Woodward. Yes, Woodward. I don't believe that there is an inadequacy. The affidavits state that the intersection, and that includes the stop sign, which Plano argues is not really of any consequence here. But the affidavit states that the intersection was under the ownership and control of the state of Illinois. Thank you. I'll let you do what you planned on doing when you stepped up. Thank you. As far as the 615 issue, it's well established that to state a cause of action, a complaint must be both factually and legally sufficient, setting forth a legally recognized claim as its basis for recovery. In this case, to state a cause of action for negligence, the plaintiff has to show and plead facts that show that the city owed a duty to the plaintiff with respect to this intersection, that the city breached that duty, and that the city's actions caused the plaintiff resulting injuries. I don't need to remind the court that Illinois is a fact pleading state, and that the law is clear that where a complaint contains conclusions which are unsupported by facts, it must be dismissed. And this is true regardless of how many conclusions that that complaint contains. And whether or not it informs the defendant in a general way of the cause of action against them. The fact that a defendant may be generally aware of the nature of the cause of action against them does not relieve the plaintiff of its obligation to plead facts versus conclusions. The city's argument here is that plaintiff's complaint does not sufficiently state facts to support a cause of action for either negligence or recklessness, because the allegations that it sets forth in its complaint are simply broad conclusions, and they're not supported by sufficient facts. This issue was... Well, what about opposing counsel's representation that there's a sightline problem in the design? That seems pretty specific. Well, I would agree that that seems to be specific. But I would also offer that that is also something that could be viewed as the pleader's own subjective impression of that intersection. Well, Justice Steigman was asking about how far back do we go, and I'm wondering, let's assume that there is a sightline problem where counsel says there's a sightline problem. Is that necessarily relevant to the fact that the accident took place at the intersection? I mean, is that something we should even be considering? I don't believe that is something that we should be considering. But again, as alleged, I would argue that we need more. We need more detail. We need more information, and therefore, to allege that without more facts to support that, I think goes to the city's argument that a cause of action hasn't been sufficiently alleged here. To draw the court's attention to a case that we cited in our brief, Gray v. Plano, where the court addressed the issue. They found that the lower court erred in failing to dismiss plaintiff's complaint. The court found that the complaint contained only broad conclusions as to the defendant's duty with respect to the plaintiff and breach of that duty. By failing to place and maintain a curve ahead sign. The court held also that the complaint was completely devoid of any factual impairments. And they noted that the plaintiffs were required through their amended complaint to provide the defendant with sufficient factual information, indicating the character of the evidence to be introduced and the issues to be tried. And although plaintiff attempts to distinguish this instant case from Plano, I would argue that Plano's complaint suffers from the same deficiencies as the court found in Plano. And that it does not provide the defendants with sufficient factual information that indicate the character of evidence that they're planning to introduce or the issues that will ultimately be tried. Looking at specifically paragraph 21 of Plano's complaint, it sets forth an allegation that is nearly identical to the amended complaint in Plano, which the court found only alleged broad conclusions as to duty and breach without factual support. And although the complaint in this instant case does include more than just that one allegation, I would argue again that the additional allegations represent simply more broad conclusions that are not supported. Plano also argues in their brief and attempts to define a conclusory allegation as an allegation that simply paraphrases an element of the cause of action. And he argues that he's not done that in his complaint. He also offers that conclusory allegations necessarily include allegations that seem to ultimately rest on nothing more than the pleader's own subjective impressions, as in this complaint. And that the very absence of detail demonstrates the conclusory nature of those allegations. And so, here, if we view the complaint in the light most favorable to the plaintiff, the city would argue that the plaintiff's complaint does not allege sufficient facts to support a cause of action for either negligence or recklessness. The only specific allegation that is not in the case of the plaintiff is that the plaintiff's complaint does not allege sufficient facts to support a cause of action for either negligence or recklessness. The only allegations that the complaint contains as to the intersection are the allegations that relate to the placement of the stop sign, which Plano argues that the complaint is not just based on the placement of the stop sign, but it's based on the intersection itself creating a dangerous condition. And so, aside from the placement of stop sign allegations, if we look at the remainder of the allegations in the complaint, I would argue that those allegations constitute broad conclusions, such as those that the court noted in Gray v. Plano, which do not support a cause of action for negligence or recklessness. And in concluding, I would reassert that regardless of whether or not the defendant is generally aware of the cause of action being alleged against them, the plaintiff is not relieved of its obligation to plead facts and not simply conclusions. As the court noted in the Knox College case that we cited in our brief, if a motion to dismiss admits only facts that are well-played and not conclusions, then in considering the motion, if after deleting the conclusions that are pleaded that are not sufficient allegations of fact, which state a cause of action against the defendant, the motion must be granted regardless of how many conclusions the complaint may contain and regardless of whether or not the defendant is aware of the cause of action. And if not, they inform the defendant in a general way of the nature of the claim against them. The allegations in Plano's complaint are not factually sufficient. Therefore, the complaint was properly dismissed pursuant to 615. And we would respectfully request that this court affirm that decision. Thank you, Counsel. Thank you. Mr. Elwood? Thank you. Brad Elwood on behalf of the Woodside Defendants. Your Honor, you had posed three questions in both Counsel's argument. Essentially, the leading up question, the intersection question and the affidavit. And I think those all can be viewed in the context of two things here. What has been pled and what has been argued. And they're completely different universes. When we look at what was pled in this case, when we look at the general allegations of the complaint at pages C3 and C4 of the record, and then we look at the specific allegations, at least as to my clients, beginning at page C15, what we see is a common denominator of a reference to intersection, placement of signs, steep decline of the Adlai Stevenson Drive, poorly maintained roadway, and a number of other issues. In this case it's the intersection. Poorly maintained nature of the road intersection. Poor maintenance of intersection. Unreasonably unsafe intersection. An intersection is a point where two things meet. We know from the police report. We know from the allegations that the car and the motorcycle struck in the intersection. There's nothing in this complaint that talks about a design, a failure of a plan, a failure of leading up. It talks about the intersection where the two streets meet. And when we look at the actual intersection and we say, who owns that? I don't think these affidavits are insufficient in any regard as to who owns or controls the intersection and that reasonable amount of property around it where the signage is placed. Again, a problem with respect to the signs. The stop sign was under control of IDOT in this case. Neither of the defendants had control over that. The suggestion that there should have been something running up to or leading up to, first of all, is not found anywhere in an amended complaint. Just not in the complaint at all. But I think even if it were, it would run afoul of 3-104 which says that a municipality does not have an obligation to warn of a dangerous condition that's not on its property. So the dangerous condition that they're talking about here has to do with the line of sight on Adley-Stevenson Drive. That is someone else's property. And the cases that we cited, the Culver case, the Fitt case and the Gresham case, all talk about that in a very similar manner as to this case and say, no, you don't have an obligation as a municipality to provide signage to warn of a condition even if you know of it because it's not on And they're very, very different in this case. And I think they define the questions that the court has asked as far as the notion of allegations of negligence leading up to the intersection. Well, that's not pled. That's just not pled anywhere. I've read through this again. I looked through it when we were sitting here this morning. It's not pled. It focuses on intersection and the sign and the maintenance of the intersection. Again, it's that point of the T-intersection where this accident happened. And what about Mr. Nestler's argument that, see, that's the kind of stuff that, given the granting of the motion to dismiss, I could now have put in my amended complaint? I think that's key. He didn't file an amended complaint. But as far as his comments to the court, I understand the sympathies of having an interaction with the court when certain procedures need to be underdone. But you have to undertake those procedures. We all know that when you file a motion for leave, you have to give the court a copy of what you're saying should be filed. Uncomfortable or not, that's our job. That's why we're called lawyers. We do things like that. And you have to say, Your Honor, I understand you may have a predisposition on this, but I have to protect my record. I give that advice to our trial lawyers at Hile daily. You have to protect your record and you have to do things like this that may sometimes be uncomfortable, but the case law, including cases from this court, are overwhelmingly clear. There's a way to do it. Had he walked in even after the hearing and said, Well, Your Honor, I understand how you ruled, but I'm filing an official motion within 30 days. I want you to take a look at this. He could have presented that and had a hearing and said, This is what I'm talking about. This is the context that I'm putting this in and why I'm saying that we have a cause of action. The court could have looked at that and said, I still don't think so. Or the court could have said, You're right. That's an interesting angle and I wasn't thinking about that motion granted. That never happened. The opportunity was never given. That's how it has to happen. And I understand we get uncomfortable in situations, but you have to do it. You have to follow the law. There has to be means to protect your record and preserve your air for appeal. I can't just say, Well, Your Honor, I was uncomfortable. I didn't want to make that objection. You can't do that. You never let people get away with that. You just cannot advocate that type of approach. And it was very simple here. Very simple here. And again, when we look at what was pled, it all goes to the intersection. It's all covered by the affidavits. And all these additional arguments are just that. They're arguments. There's no facts pled. This affidavit that they offered in contradiction to the two affidavits that the defendants presented, I believe that you might have facts that might contradict what you just said. I honestly have never seen that. That's rather interesting. That does not contradict an affidavit of someone saying, I'm in a position of authority over this particular amount of records or documents or this job. And in my capacity is that I say, We don't own that property. They do. If you want to counter that, you have to bring in somebody that says, Well, I was there for this window and I know for a fact that there was another deed or something that transferred this property. You have to create some kind of question that makes the judge look at that and say, No, wait a minute. You're saying ownership. You're saying no ownership. Whether or not you have credibility or not, we have to weigh that. That has to go to a jury. We have to move forward. We don't have any of that. You can't just say, I believe that you have facts that might prove differently from what you put in your affidavit. That doesn't work. Counsel has talked about the design. He talks about the design planning in two different contexts. One of them, it has to be in the context of leading up, you should have warned. Well, I think the cases we cited address that. We have no duty to warn of a condition on someone else's property. But the other thing that I found a little disturbing at first was he's essentially arguing in his reply brief that, Well, when you built the road, you should have picked another location. And maybe it shouldn't have been where Stevenson's at a slope. It should have been at a different spot so we didn't have this line of sight problem. But interestingly, if you look at the affidavit that the city produced, and you look at pages C80, 81, and 82, the interesting thing that you'll find is that when we go back to the actual submission of these documents by the state back in 1937, when they submitted their proposal as to the dedication of this plot and the acquisition of this land and what their proposal was for the Stevenson Road, my client's road already was there. To put it in very simple terms, IDOT came to us. Our road was there. How can we design and plan something when we already were there? They came to us, they control where their intersection is going to go, and they control how they set it up because they own it. And the higher authority controls the lower authority. So if you look at those documents on those pages, you'll see that when the state planned this road, we were already there. So it can't be that we put it in the wrong spot. So I just ask you to think about that in the context of the allegations. Again, I keep coming back to two points. What's been pled and what's been argued. And it's that simple. When we look at what was pled, it fails. When we look at what was argued, they had a chance to do that, and they didn't. And they're just asking this court to leave to amend on what they're representing. You don't even know what it looks like. I don't know what it looks like. I don't know what their complaint would look like. They don't know what it looks like. They've never drafted one. So we're just asking this court to certainly say, based on what was pled, based on the law, and based on the facts that were presented by the affidavit, that the entry of the dismissal order was proper. But we're also asking to look at the leave to amend and say that that was properly denied as well. They failed to follow the rules. They failed to tender the proposed. And without that, the case law gives discretion to the trial judge. There's no reason to show that this was an abuse of discretion. Thank you. Thank you, counsel. Any rebuttal, Mr. Nessler? The affidavits filed by the defendants were insufficient. Let me get that last part. The affidavit filed by the defendants was what? Were insufficient. Insufficient? Insufficient. Okay, go ahead. Despite counsel's assertion that the design of the intersection is not at the core of the plaintiff's complaint or that it's not contained in the plaintiff's complaint, it is. It's alleged throughout the plaintiff's complaint that the design of the intersection was what the problem here is, and that from the use of that plan or design, it indicated there was a problem. Whether there's a case or not that discusses that an intersection's design necessarily includes the roads that connect one another or not, I don't think comes into play because it's just a factual reality that we all live in. Intersections can't exist in and of themselves. There are roads that connect. And those roads necessarily have roads leading to the intersection. You can be stopped at an intersection. I mean, it's a term phrase we all use. Point being that the plaintiff's complaint alleges that there's a defect in this design. The affidavits filed by the defendants to support dismissal at a 619 phase don't discuss Woodward Street. They discuss a stop sign, which doesn't have anything to do with the plaintiff's complaint. They discuss Adelaide Stevenson, which certainly has something to do with the plaintiff's complaint, but they're just one negligent actor amongst many. And we in Illinois can have multiple torque-feasers responsible for the same injury. Illinois is one of them. The other is Woodside Township. The other is the city of Springfield. They all share responsibility for what happened in this case. And so does the driver, for that matter, but she's already settled, so that's outside of the purpose of this complaint. Point being that when you look at the complaint, stop signs are mentioned, but they're mentioned specifically with the reason to show that here's where the vehicle stopped. They're stopped at the intersection. They're stopped at the stop sign. The design of this intersection is what the problem is because there's no line of sight. The stop sign is a component, but there is no allegation in the plaintiff's complaint that anybody should have – that anybody failed to provide traffic signals or signs. And that's what the immunity that is being discussed addresses. It has nothing to do with it. It doesn't have to do with that for the purpose of these defendants. Maybe Illinois has something to answer for that, but that's in the Court of Claims. It's filed and it's just sitting there waiting for the conclusion of this. But the fact of the matter is that it's the design and the plan of this intersection that these defendants did wrong, not the placement of a stop sign. And if we look at the charging allegations in the complaint, we very specifically see that that's what's charged. We see that there was a failure to remedy a known dangerous condition that was created by the plan of design that should have been known from the use, the statutes cited, or in the alternative, that there was a maintenance issue, which I've already discussed with your justices today. The fact of the matter is these things are alleged. They're, frankly, what completely distinguishes the case from Plano. I mean, you read Plano and you see these paragraphs. They have a duty. They breached that duty. The end. And the Court is very clear about that. And they even go back to say, well, you didn't even cite the statutes that you thought that they violated, and you have to do that. Well, in this case, we did cite the statutes. It's very clear. There's not some vague general idea of what our cause of action is. We know exactly what our cause of action is. Our cause of action is a failure to remedy a dangerous condition that exists on property, property that's owned, maintained, designed by Woodward Township or the City of Springfield. We don't know that. There's a genuine issue of material effect there. We should have denied the 619 motion based on the genuine issue of material effect. But the fact of the matter is that we have a defect in design. Nothing to do, excuse me, not nothing, but it doesn't solely have to do with the placement of the stop sign. It has to do with the fact that a dangerous condition existed on this property that led to this injury. And they had a duty to remedy that condition as pled in the plaintiff's name. Thank you. Thank you, Counsel. We'll take this matter under advisement and be in recess until the next case.